

**FILED**

FEB 1 4 2006

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 05-40123 |
|  | * |  |
| Plaintiff, | * |  |
|  | * | REPORT and RECOMMENDATION |
| vs. | * | (Motion to Suppress) |
|  | * |  |
| GREGORIO ARANA-ARELLANO, | * |  |
|  | * |  |
| Defendant. | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pending is Defendant's Motion to Suppress Evidence (Doc. 28). A hearing was held on Thursday, February 2, 2006. Defendant was personally present and represented by his counsel of record, Mr. Mike Hanson. The Government was represented by Assistant United States Attorney Mr. Jeff Clapper. United States Secret Service Agent Randy Walker and ICE Special Agent Craig Scherer testified at the hearing. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **GRANTED** in part and **DENIED** in part.

## JURISDICTION

Defendant is charged in an Indictment with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated February 1, 2002.

## FACTUAL BACKGROUND

Secret Service Agent Randy Walker became involved in an investigation regarding counterfeit money in the Sioux Falls, South Dakota area in the late summer of 2005. During the course of that investigation, the Defendant, Mr. Gregorio Arana-Arellano came to Agent Walker's attention through subjects who were arrested in Sioux City, Iowa. The Sioux City subjects claimed they received the counterfeit money from Mr. Arana.[1] TR 5. Agent Walker also interviewed Mr.

---

[1]Though the Defendant said is correct surname is Arellano-Arana, he was generally referred to as either Greg, Gregorio, or Juan Arana by the witness throughout the hearing. For

John Eslinger, who is Mr. Arana's father-in-law. TR 5-6. Mr. Eslinger advised that Mr. Arana was living with Amber, Mr. Eslinger's daughter, in Sioux Falls, and that Mr. Arana worked at Wendy's in Sioux Falls under the name "Juan Arana" and drove a brown, rusty pick up truck. TR 6-7.

Agent Walker interviewed the Wendy's Manager at the location where Mr. Eslinger advised Mr. Arana worked. The Manager stated "Juan" Arana was fired for failing to show up. TR 7. The Manager also stated Amber Arana (the Defendant's wife) was the manager at another Wendy's location in town (41st Street). TR 7. Agent Walker interviewed Amber Arana. Amber claimed she had seen her husband with counterfeit money and he had given her sister counterfeit money, but he had left the area and she had not seen him since. She claimed her husband was no longer living with her. Amber said her husband had been in the country illegally, and had been deported previously for weapons violations. TR 8, 17. Amber told Agent Walker she would contact the Secret Service if her husband returned. TR 8.

Agent Walker contacted ICE (Immigration and Customs Enforcement) Agent Craig Scherer to see whether Agent Scherer could find any information regarding Gregorio Arana. TR 23. Agent Scherer checked the ICE databases for an individual with that name. Agent Scherer found that Mr. Arana-Arellano was not legally in the United States. Specifically, Mr. Arana-Arellano had previously been deported as an aggravated felon because of his previous arrests. TR 23-24. Agent Scherer also learned Mr. Arana-Arellano had an FBI and an Alien number. TR 24. Agent Scherer provided Agent Walker with a photograph from Mr. Arana's "A" file. TR 24. Agent Walker advised Agent Scherer that Amber Arana claimed Gregorio Arana no longer lived in the country. Agent Walker also advised that an informant had identified the individual in the photo as a person who lived on N. Walts Avenue. TR 25. Agent Walker also informed Agent Scherer that an individual named "Juan" Arana had been working at a local Wendy's restaurant. Agent Scherer investigated and found "Juan" Arana was a person who was born in Nicaragua, and was lawfully in the United States. TR 25-26. Agent Scherer concluded Gregorio Arana had assumed the identity and Social Security number of Juan Arana for the purpose of gaining employment in the United States. TR 26.

A search warrant was obtained for the address on Walts Avenue and any persons on the

---

ease of reference, he will be referred to as either "Mr. Arana," "Juan Arana" or "Gregorio Arana" as appropriate throughout this opinion.

premises.[2] Before the warrant was obtained, Agent Walker observed a brown truck parked outside the home, which was registered to Juan and Amber Arana. TR 10. Also, the name on the mailbox was "Arana." The postal service also advised the name "Arana" was associated with the Walts Avenue address. TR 10,27. The Agents did not believe anyone other than Amber and "Juan" Arana lived in the home.  TR 13.

On the morning of October 6, 2005, Agent Walker and other law enforcement officials including Agent Scherer gathered in the parking lot of a restaurant near the Arana home in preparation to execute the search warrant. TR 12. The agents could see the residence from the parking lot. As they prepared to execute the warrant, the Agents saw the brown pick up lights come on. The pick up backed up and it drove away. TR 13.

The Agents got into their vehicles and followed the brown pick up.  Lights from another vehicle illuminated the inside of the pickup, revealing two persons. Agent Walker, whose vehicle was immediately behind the pick-up, pulled up alongside and then in front of the pick up. He could see that Amber was driving and a male was beside her. TR 14. Agent Walker activated the emergency lights in his vehicle and blocked the pick up. The pick up pulled to the side of the road. TR 14.   Agent Walker exited his vehicle and walked to the passenger side of the pick up. He observed that the passenger was the individual he recognized from the information provided by Agent Scherer as Greg Arana. TR 15. Agent Scherer also recognized the male passenger as Gregorio Arana.  TR 29. Agent Walker asked Mr. Arana to get out of the vehicle.  Agent Scherer arrived closely behind and assisted. Agent Walker did not have a weapon drawn, but Agent Scherer did initially have his weapon drawn when the pick up was stopped. TR 19, 30.  With Agent Scherer's assistance, Agent Walker handcuffed Mr. Arana and placed him on the ground in an adjacent yard.[3] TR 15, 30.

Agent Scherer identified himself and indicated to Mr. Arana that he was present because he believed Mr. Arana's true name was Gregorio Arana and that he was present in the United States

---

[2]The front page of the search warrant (EX A) which was received into evidence specifies that certain evidence is believed to be located on the premises identified in the warrant. Agent Walker explained that the attachment to the warrant, which was not received into evidence, also requested permission to search any persons found within the premises. TR 17.

[3]TAgent Walker testified Mr. Arana was handcuffed for officer safety reasons, based on Mr. Arana's history of a previous weapons violation.

illegally. TR 30. Agent Scherer stood Mr. Arana up, and noticed Mr. Arana had a tattoo on the back of his neck which said "el cuervo." TR 36. This tattoo matched the description of a tattoo on Gregorio Arana, according to information in Gregorio Arana's FBI file. TR 36. Mr. Arana said his name was "Juan." TR 31. Agent Scherer asked for Mr. Arana's identification. Mr. Arana said his identification was in his back pocket, in his wallet. TR 31. Agent Scherer retrieved the wallet, which revealed a California driver's license and a Social Security Card, both containing the name "Juan Arana." TR 31. Agent Scherer asked Mr. Arana his name, and where he was born. Mr. Arana said he was "Juan Arana", born in the United States. TR 31. Agent Scherer told Mr. Arana that Juan Arana, with the Social Security number claimed by him was born in Nicaragua. TR 32. Agent Scherer asked no further questions. [4] Mr. Arana was placed into a vehicle and transported to the ICE office. During the trip, Agent Scherer referred to Mr. Arana as "Juan" when advising him to get into the vehicle, and about what was going to happen when they arrived at the ICE office. TR 32. Mr. Arana stated "why do you keep calling me Juan when you know my name is Gregorio?" This statement was not made in response to any question posed by Agent Scherer. TR 32.

When Agent Scherer and Mr. Arana arrived at the ICE office, Agent Scherer advised Mr. Arana of his *Miranda* rights. Mr. Arana chose not to make any statements without counsel present, so Agent Scherer terminated the interview. TR 33. Because Agent Scherer suspected the person in custody was not Juan Arana (as the suspect claimed) but instead was Gregorio Arana, Agent Scherer also obtained a set of Mr. Arana's fingerprints at the ICE office. TR 33. The fingerprints were processed through the ICE biometric fingerprint identification system. The results showed that the individual in custody was in fact Gregorio Arana, who had been previously arrested and deported. TR 34.

## DISCUSSION

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, United States v. Phillips, 540 F.2d 319 (8th Cir.1976) cert. denied, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976), but on the government to justify a warrantless search or seizure. United States v. Bruton, 647 F.2d 818 (8th Cir.1981) cert. denied, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). The Government also bears the burden of proving by a preponderance of the evidence that

---

[4]No *Miranda* warnings were given prior to this questioning by Agent Scherer. TR 31.

4

Miranda warnings were either not necessary or that they were given and effectively waived. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); United States v. Short, 790 F.2d 464, 467-68 (6th Cir. 1986); United States v. Charbonneau, 979 F.Supp. 1177, 1181 (S.D. Ohio 1997). The standard of proof is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

The issues in this case are: (1) whether the stop of the pick up and the seizure of Mr. Arana were reasonable under the Fourth Amendment; (2) whether Mr. Arana's statements at the scene of the stop are admissible, (3) whether Mr. Arana's spontaneous statements regarding his true name are admissible; and (4) whether the California identification card and Social Security card found in Mr. Arana's wallet are admissible.

## 1.    The Stop of the Pick up and the Seizure of Mr. Arana

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, except upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Agent Walker explained the search warrant obtained for the N. Walts address, where he believed Juan a/k/a Gregorio and Amber Arana lived, also allowed for the search of all persons present at the premises. While the officers were preparing to search, however, the vehicle believed to be owned by Amber and Juan a/k/a Gregorio drove away from the residence. "Police officers may make a valid investigatory stop of a vehicle based on reasonable suspicion that the occupants are engaged in criminal activity." United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999) (stop valid where police had reasonable articulable suspicion of criminal activity; defendant immediately removed from vehicle and handcuffed). See also United States v. Jacobsen, 391 F.3d 904, 905 (8th Cir. 2004) (no Fourth Amendment violation when vehicle stopped without a warrant and without traffic violation; police had reasonable suspicion based on informant's tip). There were two adults in the vehicle, it was early in the morning, and the officers were not aware of anyone other than Amber and Juan a/k/a Gregorio living at the home. The information previously gathered by the Agents led them to reasonably believe Juan a/k/a Gregorio was in the country illegally, that he may be involved in other illegal activity (counterfeiting), that he probably lived at the N. Walts address

5

with Amber, and that he was probably in the pick up with Amber on the morning of October 6, 2005. The Fourth Amendment was not violated when the officers stopped the brown pick up and seized Mr. Arana.

Agent Scherer acted under another source of authority when he seized Mr. Arana. "Given the government's important interest in enforcing the nation's immigration laws . . .it was constitutionally reasonable for the INS agents to detain [the suspect] for the limited purpose of questioning him about his citizenship, whether or not the agents had his consent or reasonable suspicion of criminal activity." United States v. Angulo-Guerrero, 328 F.3d 449, 451 (8th Cir. 2003) (Loken, concurring, citing 8 U.S.C. § 1357(a)(1)). As explained in United States v. Flores-Sandoval, 422 F.3d 711, 714 (8th Cir. 2005), 8 U.S.C. § 1357(a) gives Immigration officials the authority to detain and interrogate any alien or person *believed* to be an alien as to his right to be or remain in the United States.  The difference between Flores-Sandoval and the instant case is that in this case, the officers had reason to believe, *before the stop*, that Mr. Arana may be an alien who was in the United States illegally.

### 2.    Mr. Arana's Statements at the Scene of the Stop

"Law enforcement officials must administer *Miranda* warnings whenever they interrogate persons in their custody." United States v. Brave Heart, 397 F.3d 1035, 1038 (8th Cir. 2005) (citations omitted). A person is in custody when he is formally arrested or his freedom of movement is restrained to a degree equivalent with formal arrest. Id.    To determine whether a person is in custody, the Court looks to the totality of the circumstances confronting the defendant at the time of questioning. The determination is based on the objective circumstances of the interrogation rather than the subjective views harbored by either the officers or the person being questioned. Id.  The only relevant inquiry is whether a reasonable person in [Mr. Arana's] position would have felt at liberty to end the interrogation and leave. Id. at 1038-39. Both Agent Walker and Agent Scherer agreed Mr. Arana was "detained" at the scene of the stop. Neither assert Mr. Arana was advised of his *Miranda* rights.  The vehicle in which Mr. Arana had been riding was blocked on the street by unmarked law enforcement vehicles.  He had been ordered out of the vehicle and handcuffed on the ground.  No reasonable person in his position would have felt free to leave.  Any statements given by Mr. Arana at the scene of the stop which were in response to custodial interrogation, without the

6

benefits of the *Miranda* warnings, should be suppressed. [5]

### 3.    Mr. Arana's Spontaneous Statements Regarding His Identity

While non-*Mirandized* custodial statements made in response to custodial interrogation are not admissible, the statements Mr. Arana made to Agent Scherer during the ride to the ICE office which were not in response to any questions are analyzed under a different standard.

> Interrogation is not limited to express questioning; it includes words or conduct that the officer should know are reasonably likely to illicit an incriminating response from the suspect. *Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer.

United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005). In Chipps, the spontaneous statement made by the suspect was admissible, because it was made in response to a statement by the officer that was not likely to elicit incriminating evidence. Id. "It was a statement of fact not a plea to the conscience, and it was not accompanied by any threats or other coercive pressure." Id. Likewise, the statement by the suspect in Chipps was not made in response to a question from the officer. Id. See also United States v. Criswell, 696 F.2d 636, 639 (8th Cir. 1983) ("to determine whether the authorities deliberately elicited a statement, courts look primarily to the intent of the police.").

In this case, Agent Scherer testified that during the drive to the ICE office,[6] when he gave Mr. Arana basic instructions and informed him about the procedure that would occur at the ICE office, Mr. Arana said "why are you calling me Juan when you know my name is Gregorio?" Basic instructional/informational statements in which Agent Scherer referred to Mr. Arana as "Juan" instead of "Gregorio" were not likely to elicit incriminating evidence, were not geared toward appealing to his conscience, and were not threatening or coercive. No question was pending, and by merely referring to Mr. Arana by the first name he insisted he should be called, it cannot be concluded Agent Scherer intended to elicit an incriminating statement. The spontaneous statements Mr. Arana made during the ride to the ICE office should not be suppressed.

-------

[5] Agent Scherer's authority to detain and interrogate Mr. Arana under 8 U.S.C. § 1357(a) does not change the result. As explained in INS v. Lopez-Mendoza, 468 U.S. 1032, 1042-43, 104 S.Ct. 3479, 3485, 82 L.Ed.2d 778, while the exclusionary rule does not apply in civil deportation proceedings, it remains applicable in the criminal prosecution of an alien who unlawfully enters or remains in the United States.

[6] Although it does not appear in the record, the Court is otherwise aware that the drive from the location of Mr. Arana's arrest on N. Walts Avenue to the ICE office in Sioux Falls is relatively short (a matter of less than fifteen minutes).

**4.     The California Identification Card and The Social Security Card**

Agent Scherer located the California identification card and the Social Security card in Mr. Arana's wallet in response to Agent Scherer's inquiry, while Mr. Arana was handcuffed at the scene of his arrest and before Mr. Arana was advised of his *Miranda* rights. The identification card and Social Security card are admissible nonetheless. It has already been determined the Agents had reasonable suspicion that Mr. Arana was engaged in criminal activity, and that he was in the brown truck which left the home on N. Walts Avenue.     Neither the stop nor the seizure of Mr. Arana violated the Fourth Amendment. When Agent Scherer stood Mr. Arana up, he noticed a tattoo on Mr. Arana's neck. Agent Scherer knew the tattoo matched the tattoo of the person known to Agent Scherer as Gregorio Arana- Arellano, who was in the United States illegally and was a previously deported felon. He also recognized Mr. Arana from the photo in Gregorio Arana-Arellano's "A" file. At that moment in time, Mr. Arana was under arrest. "[I]f an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets." United States v.Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004). A search of a wallet incident to arrest is permissible. United States v. McEachern, 675 F.2d 618, 622 (4th Cir. 1982). Mr. Arana's identification card and Social Security card, therefore, would have been found whether or not he told Agent Scherer they were in his wallet. Evidence which would have been inevitably discovered need not be excluded even if it was technically obtained as a result of a *Miranda* violation. Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The identification card and Social Security Card should not be suppressed.

## CONCLUSION

Agents Walker and Scherer had reasonable suspicion that Mr. Arana was involved in criminal activity (illegal presence in the country and counterfeiting). They reasonably believed he was in the brown pickup when it was detained on October 6, 2005. The seizure of the pick up and of Mr. Arana on October 6 did not violate the Fourth Amendment. The statements Mr. Arana made at the scene of the stop, which were in response to interrogation by the Agents, however, are not admissible because Mr. Arana was in custody and no *Miranda* warnings had been given. Mr. Arana's spontaneous statements, made during the ride to the ICE office, not in response to any questions by Agent Scherer, are admissible. The California identification card and the Social Security card found in Mr. Arana's wallet are admissible because although a non-*Mirandized* Mr.

8

Arana told Agent Scherer they could be found in his wallet, the documents would have been inevitably discovered pursuant to a search of Mr. Arana's person incident to his arrest.

THEREFORE, it is respectfully RECOMMENDED to the District Court that Mr. Arana's Motion to Suppress (Doc. 28) be GRANTED in part and DENIED in part as follows: (1) The stop of the brown pick up and the seizure of Mr. Arana on October 6, 2005 did not violate the Fourth Amendment. (2) Mr. Arana's un-warned statements at the scene of the stop, however, made in response to custodial interrogation, should be suppressed. (3) Mr. Arana's spontaneous statements, made in the vehicle during the ride to the ICE office, should not be suppressed. (4) The identification card and Social Security card which were removed from Mr. Arana's wallet were properly seized incident to his arrest and should not be suppressed.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990)

Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 14 day of February, 2006.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By Shelly Margulies, Deputy

(SEAL)

9